CHIEE JUSTICE DUVALL
delivered th^ opinion op the court:
In October, 1859, Foudry executed to Havens and others two deeds of conveyance which, with the defeasance executed on the same day by the grantees, was intended to operate as a mortgage to secure and indemnify the grantees, who were ■sureties of Foudry in various specified debts, against loss or damage on account of their suretyship. Among those debts was a note to Kendall for $1,100, on which Davis and North-cott were bound as sureties of Foudry. Kendall having obtained judgment on this note, execution issued against all the obligors, and in May, 1800, it was replevied by Foudry as principal, with McGregor and others as sureties — Davis and North-cott, the sureties in the original debt and defendants in the execution, refusing to join in the execution of the replevin bond.
The sureties in the replevin bond having been compelled to pay the debt, brought this suit in equity, claiming a personal judgment against Foudry, Davis and’Northcott, and also that they were entitled, by substitution, to the indemnity provided by the mortgage from Foudry to his sureties. They furthermore allege that they executed the replevin bond at the instance of Davis and Northcott, who were to indemnify them by a transfer of their interest under the mortgage, and that their failure to join in the replevin bond was the result of a mistake on the part of the sheriff These allegations were denied, however, and were wholly unproved.
The relief sought by the plaintiffs was resisted by Havens and the other mortgagees, who claim that they are entitled to the benefit of all the mortgaged property for the payment of the debts on which they were bound as sureties and which debts had been paid by them, and that the debt to Kendall having been satisfied in the manner stated, neither Davis nor Northcott, nor the replevin sureties who paid it, had any interest whatever in the mortgaged property.
*249 The court below, on final hearing, rendered a judgment deciding in effect that the plaintiffs, McGregor and others, were entitled, by substitution, to all the rights and equities of Davis and Northcott under the mortgage, and to share equally with the other mortgagees in the distribution of the fund arising from the sale of the property. From that judgment Havens and others have appealed.
On the part of the appellees it is contended that the propriety of this-judgment is maintainable upon the well settled equitable principle, that a surety who pays a debt is entitled to stand in the place of the creditor, as to all liens and equities to which he has a right to look as a security for the payment of his debt. The soundness of this general principle cannot be questioned. But to bring the present case within it, it must, of course, be shown that at the time the appellees paid the debt to Kendall he had a valid and subsisting lien upon the property in contest, such a lien as a court of equity would have enforced at his instance for the satisfaction of his debt.
What, then, were the rights and equities of Kendall with respect to the mortgaged property, either at the time the appel-lees became bound for his debt, or at the time they paid il?
As has been stated, the object of the conveyance from Fou-dry to his sureties was to indemnify them against any loss which either of them might sustain in consequence of their several suretyships; and such was the legal effect of the deeds. If, then, Kendall acquired any interest under the deeds, it was not on the ground of any contract between the grantor and him, nor of. any direction, or intention, express or implied, on the part of the grantor, in his favor. His right, whatever it was, rested solely on the principle of subrogation, according to which a creditor is allowed to be substituted to any securities provided by the principal debtor for the indemnity of his sureties. And this arises, as has been well said, not from any notion of mutual contract between the parties, that in providing for the surety the creditor shall be .equally provided for, but from a principle of natural equity independent of contract. namely, that to prevent the surety from being first har- *250 rassed for .the debt, and then turning him round to seek redress from the collateral security given by the principal, a court, of equity will authorize and even encourage the creditor to claim, through the medium of the surety, all the rights he has thus acquired, to be exercised for his benefit and in discharge of his obligations. (10 Leigh, 221.)
It is clear, therefore, that as long as Davis andNorthcott remained bound, as sureties in the debt to Kendall, he had an equitable lien upon the security provided by the mortgage for their indemnity, alien which he might "have enforced by appropriate action, the necessary effect of which would have been to benefit the sureties by exonerating them from personal liability to the extent, at least, to which the debt might have been satisfied out of the mortgage security.
It is equally clear that as Kendall derived his equity through the sureties, and as a consequence of their liability lor the debt, whatever act or omission of his may have operated tó discharge or release them from liability, had the effect necessarily to destroy his equity. For the right of the sureties to participate with their co-mortgagees in the mortgage fund ceased immediately upon their release, and there was consequently no equity left for the creditor to assert by substitution.
Were the sureties, Davis and Northoott, released from liability by the execution of the replevin bond in which they refused to join? This is no longer an open question. In the cases of Kouns vs. Bank of Kentucky, (2 B. Mon , 303,) and Hoskins vs. Parsons, (1 Met. Ky. Rep. 252.) it is expressly decided that the execution of the replevin bond in such cases merges the judgment and releases the original sureties in the debt.
The very act, then, which rendered the appellees liable as sureties on the replevin bond discharged the original sureties as effectually, for all purposes, as if the creditor had given them a direct and formal release, he having failed to take steps for quashing the bond, as he might have done, within a reasonable time after its execution.
It results, from what has been said, that at the time the ap-pellees paid off the replevin bond the creditor whose debt they *251 paid had no equitable right to the fund in contest, by substitution or otherwise, and they of course could acquire none. Had Davis and Northcott been the only beneficiaries under the mortgage, they would have had no interest in opposing the ap-pellees’ claim, and it may be that the principal debtor, Foudry, could not in that case have objected to the application of his property in this proceeding to the payment of his debt. However that, may be, it is quite certain that the other sureties, for whose indemnity the deeds were made, have the right to claim complete indemnity out of the fund, and for that purpose to resist, the burden sought to be imposed on it by the claim set up by the appellees.
We are not aware that an}r case involving the precise questions we have been considering has been decided by this court. The principles that have been stated, however, have been recognized and acted on by very high judicial authority.
In the case of Hopewell vs. the Cumberland Bank of Aleghany, (10 Leigh, 206) decided by the Court- of' Appeals of Virginia, several persons were bound as sureties for one Machir in bond, and others were indorsers of notes for his accommodation at different banks, which notes had matured and been protested for non-payment. Machir, by deed of trust, conveyed certain property to be sold and applied to the indemnity of each and all his indorsers in case they should sustain loss by reason of their suretyships and indorsements; the indorsers of a note held by one of the banks were discharged from liability by the laches of the bank in failing to give notice of protest, so that the indorsers of this note were never damnified, while other sureties and indorses were; it was held that the bank could only claim to be subrogated to the rights of the indorsers of the note which it held, and these having sustained no damage, and so having no claim to participate in the trust fund themselves, therefore the bank had no claim to participate in it.
In the subsequent case of The Bank of Virginia vs. May, reported in 12 Leigh, 387, a deed of trust was executed to indemnify afirst indorser at bank, from loss; the note was not paid, but the first indorser was discharged from liability by the failure of the bank to give him due notice of dishonor: The court held, *252 on.the authority of the former case, that neither the bank nor any subsequent indorser had any claim to rank as creditor on the trust fund under the deed, by subrogation to the first in-dorser, who was thereby indemnified, but who, having been released from liability, had never sustained any loss.
It follows that the court below erred in appropriating any portion of the fund created by the mortgage, to the satisfaction of the appellees’ demand against their principal in the replevin bond. And the judgment is therefore reversed and the cause remanded for further proceedings in conformity with this opinion.