CASE 7—PETITION EQUITY—DECEMBER 12.

# Hunter, &c., vs. Richardson, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

P. made a mortgage to R. to indemnify him as surety in several debts. For some of these debts M. became bound as P.'s surety, and thereby released R. There was no specific agreement that the mortgage should be assigned to M., or, if there was, he had failed to comply with it. *Held*—That to the extent to which M. became bound and released R., the mortgage and lien were extinguished, both as to R. and the creditors, and, therefore, afforded no available protection to M. (4 *Met.*, 247.)

HUNT & BECK for appellants.

G. B. KINKEAD for appellees.

C. D. CARR, on same side, cited *Story's Eq.*, sec. 699 ; 5 *Dana*, 246 ; 6 *B. M.*, 393.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Parker executed a mortgage to Richardson to indemnify him as his surety in several debts. Richardson desiring to be released, after having indorsed for Parker some two years, and being willing that any one who should become Parker's indorser and release him from liability should have the same indemnity, it was agreed, in general terms, between Richardson, Parker, and Moore, that the latter should become Parker's indorser, release Richardson from liability, and thereupon he should be secured the same as Richardson; but the

exact manner of perfecting this indemnity seems not to have been agreed upon. All these parties seemed to be under the impression that Parker would have to execute a new mortgage to Moore, and Richardson continued under this impression until a short time previous to this litigation, when, on consulting with his attorney, he became convinced that he could assign the mortgage to Moore.

At this time Moore had only released him from a portion of the liabilities, leaving him still responsible on the largest debts, and refused to become indorser on these.

It is therefore safe to assume that a specific agreement was never made that Richardson should assign the mortgage to Moore, or if it had been, still Moore had not placed himself in a position to demand the assignment, as he had not complied with the agreement.

Parker being sued, and being in doubtful circumstances, executed a deed of trust to Moore for the benefit of his creditors, who, as trustee, accepted and undertook the execution of the trust. The property was sold by order of court, and a portion of the proceeds applied to the discharge of the debts for which Richardson was still bound.

Moore, claiming to be assignee of Richardson, set up the mortgage, and insisted that the debts for which he had become bound should also be regarded as preference claims, and paid before a pro rata distribution should be ordered to the general creditors, and which the court allowed.

There being no assignment in fact of the mortgage by Richardson to Moore, and no express agreement that there should be, or if so, Moore, having failed to comply with the agreement, he has failed to make good his claim as assignee.

To the extent that Moore had become bound as Parker's surety, and thereby released Richardson, the mortgage and lien became extinguished both as to Richardson and the creditors.

The extinguishment of Richardson's lien extinguished the equitable lien of the creditor, hence Moore cannot be entitled to preference by subrogation, as his creditor had no equitable lien to which Moore could be substituted.

We have not determined the consequences resulting from

Moore's accepting the deed of trust, because it is not essential to do so, and because the deed is not copied into the record; therefore, we do not know what are its rehearsals.

The court properly adjudged that the debts for which Richardson was still bound should be paid as preference claims, but erroneously directed that the debts for which Moore was bound should also be paid as preference claims. As to these, Moore must abide the *pro rata* distribution of the remnant of the fund among the general creditors, embracing those to whom he is bound.

Wherefore, the judgment, so far as it gives Moore preference, is reversed.

G. B. KINKEAD, for appellee, presented a petition for rehearing, to which

JUDGE WILLIAMS delivered the following response:

The great misapprehension of the opinion, as heretofore delivered, and the known intelligence of appellants' counsel, cause the court to distrust its powers of intelligible communication.

It is said in the opinion, that "it was agreed in general terms between Richardson, Parker, and Moore, that the latter should become Parker's indorser, release Richardson from liability, and thereupon he should be secured the same as Richardson; but the exact manner of perfecting this indemnity seems not to have been agreed upon. All these parties seemed to be under the impression that Parker would have to execute a new mortgage to Moore."

The quotation from Richardson's evidence, found in the petition, is not inconsistent with, but confirmatory of, this view, still stronger confirmed, however, by the statements of Richardson in the latter part of his deposition, when referring to a conversation with Moore, after the deed of trust made by Parker to Moore, dated February 11, 1862, and more than ten months after the said general agreement by which Moore became surety for Parker. Richardson says: "Mr. Moore was under the impression that Parker would have to make him a

mortgage. *He did not know that under the mortgage I could assign it to him.*" And again, after the sale of the trust property, and Richardson finding it would pay the prior lien on the land, and all the debts secured by his mortgage, he says: " I then told Moore all about it; that I believed that he was secured as well as myself by the terms of the mortgage. *He said that he had never read the mortgage and made that discovery.*" Again, " *I believed, as Mr. Moore, that a new mortgage would have to be made, I releasing my mortgage and Parker making a new one; and I did not know any better until informed by Mr. Beck that I could assign the mortgage.*"

Now, is it not most apparent, that whilst Moore agreed to become bound in the debts for which Richardson was surety, and thereby release Richardson, and was to be indemnified as was Richardson, yet the exact manner of perfecting this indemnity was not agreed on? At least, if it were agreed on, it was by the release of Richardson's mortgage, and the execution of a new one by Parker to Moore, which has never been done, and could not be until Moore should fully release Richardson, as he would not surrender his mortgage until entirely released from responsibility.

If the assignment of the mortgage was spoken of between Parker, Richardson, and Moore, it was not agreed on, because both Richardson and Moore were ignorant that the mortgage could be assigned, until Beck told Richardson it could be; and up to that time both were under the impression that a new mortgage would have to be made by Parker to Moore. But why elaborate so plain a proposition?

Moore neither got a new mortgage, nor an assignment from Richardson of his mortgage, and on February 11, 1862, accepted a deed to the property from Parker, conveying it in trust to pay all of Parker's creditors *pro rata*, without setting out or in any manner indicating that he had any prior lien or equity. No records of the county showed he had any such prior lien; indeed, his assertion of a prior lien seems to be an after-thought, probably suggested to him for the first time by Richardson after the sale of the trust property.

It is now too late for him to assert any prior lien by reason

of the general understanding with Richardson and Parker. By this line of conduct on his part, the acceptance of the trust and part performance, he is estopped to deny the rights of the creditors, and will not be permitted to intervene between the other creditors of Parker and this fund.

As he can derive no prior lien by his agreement with Richardson and Parker, is he entitled to any such priority by subrogation? This question had been very fully considered by this court in the case of *Haven, &c., vs. Foudry, &c.*, 4 *Met.*, 247, and placed, as we still think, on impregnable grounds; therefore a very brief allusion to the principle was made in this case. We now refer to that case for an elaborate exposition of this doctrine. It will be seen by a reference to the opinion, that the counsel wholly misapprehended the court on this point.

Being still satisfied with the opinion, but finding additional reasons, on the filing of the trust deed of Parker to Moore, and seeing the misapprehension under which appellants' counsel labored, we have felt it due both the parties and the court to make these additional suggestions, supplemental to the opinion as heretofore delivered.

The petition for a rehearing is overruled.